# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RONALD MORRETT, | : |
| | : |
| Plaintiff, | : |
| | : Case No. |
| v. | : |
| | : |
| CBRE GROUP, INC., | : |
| | : JURY TRIAL DEMANDED |
| Defendant. | : |

## COMPLAINT

NOW COMES, Plaintiff, Ronald Morrett ("Mr. Morrett"), by and through his undersigned counsel, and files the instant Complaint against Defendant, CBRE Group, Inc. ("CBRE"), and in support thereof, avers as follows:

## JURISDICTION

1. Jurisdiction is proper pursuant to 28 U.S.C. §1332 as this case involves an amount in controversy exceeding the sum or value of seventy-five thousand dollars ($75,000.00) exclusive of interests and costs and is between citizens of different states.

2. Venue lies within the Middle District of Pennsylvania pursuant to 28 U.S.C. §1391(b) and (d) as the facts and occurrences, acts and/or omissions, and incidents and/or actions alleged herein took place within this judicial district.

**PARTIES**

3. Plaintiff to the above-captioned action, Ronald Morrett, maintains a primary residence of 1809 Holly Dr., Harrisburg, Pennsylvania 17110.

4. Defendant to the above-captioned action, CBRE Group, Inc., is incorporated under the laws of Delaware and maintains a principal place of business address at 400 S. Hope St., Los Angeles, California 90071.

**UNDERLYING FACTS**

5. Mr. Morrett was previously employed with Protegis Fire & Safety with a total annual compensation exceeding $150,000.00.

6. CBRE was well versed in Mr. Morrett's reputation and reached out to him regarding the possibility of joining CBRE's team.

7. Sometime in August / September 2019, CBRE offered Mr. Morrett a position as Facilities Manager for CBRE's account with BB&T Bank.

8. In connection with CBRE's application and hiring process, Mr. Morrett was required to submit to a criminal background check and also participate in an initial training period.

9. It is CBRE's policy to limit its criminal background checks to a seven (7) year look back period.

10. Mr. Morrett initially submitted to and passed CBRE's background check with the 7 year look back window.

11. In connection with CBRE's application / hiring process, Mr. Morrett began a training period with CBRE on or about September 9, 2019.

12. In order to participate in CBRE's training program, Mr. Morrett was required to resign from his employment with Protegis.

13. In resigning from his employment with Protegis, Mr. Morrett forwent approximately $150,000.00 in commission payments from Protegis which he would have otherwise been entitled to had he not resigned in order to participate in training at CBRE.

14. CBRE used the training period as part of its application and hiring process for purposes of evaluating and reviewing Mr. Morrett's performance.

15. There were no issues with Mr. Morrett's performance during his training period.

16. On or about October 30, 2019, during his training period and in connection with his application and hire, Mr. Morrett was asked to confirm a report

of fraud on his criminal record which occurred just under twenty (20) years ago—sometime around 2003.

17. Mr. Morrett confirmed the report and was placed on leave from his training period until November 20, 2019 when he was ultimately denied employment with CBRE.

18. CBRE denied Mr. Morrett employment based upon a criminal record from 2003.

19. Mr. Morrett specifically requested an explanation in writing for his denial of employment.

20. CBRE refused to provide Mr. Morrett any type of writing explaining the stated reason for denying him employment with CBRE.

## COUNT 1
## PENNSYLVANIA'S CRIMINAL HISTORY RECORD INFORMATION ACT, 18 PA. C.S. §9125

21. All preceding paragraphs are hereby incorporated by reference as though fully set forth herein.

22. It is against public policy to summarily reject an individual for employment on the ground that the individual has a prior criminal record unless in doing so the employer is furthering a legitimate public objective.

23. CBRE considered Mr. Morrett's criminal history in connection with his application of employment.

24. During Mr. Morrett's training period, and in connection with his application of employment, CBRE denied Mr. Morrett a position based upon a criminal record from 2003.

25. CBRE was not furthering a legitimate public objective.

26. In no way was Mr. Morrett's criminal history related to his suitability for employment in the position for which he applied at CBRE.

27. It is CBRE's policy to limit its own background checks to just the past seven (7) years in order to determine if an applicant was suitable for a position.

28. Mr. Morrett complied with and initially passed CBRE's background check.

29. CBRE, however, conducted an additional background check for Mr. Morrett, which was not in compliance with its policy and not done for other applicants.

30. Mr. Morrett's criminal history was almost twenty (20) years old—well beyond CBRE's 7 year look back period.

31. There is nothing to indicate that Mr. Morrett's criminal history from 2003 was in any way related to the job responsibilities of a Facilities Manager at CBRE—the position being offered to Mr. Morrett.

32. In fact, Mr. Morrett had been proven himself during his training period at CBRE.

33. CBRE was obligated under the Criminal History Record Information Act to notify Mr. Morrett **in writing** that he was being refused his job in whole or in part of criminal history information.

34. Mr. Morrett made a specific request for written notification explaining the reason for his termination.

35. CBRE failed to provide the required legal notice.

WHEREFORE, Mr. Morrett prays for damages in excess of $75,000.00 (exclusive of interests and costs), including but not limited to all commissions he forwent at Protegis, lost back pay and future earnings. Mr. Morrett also demands his attorney's fees, costs, exemplary and punitive damages, and any other damages available to Mr. Morrett under the law.

## COUNT 2
## PROMISSORY ESTOPPEL

36. All preceding paragraphs are hereby incorporated by reference as though fully set forth herein.

37. In offering Mr. Morrett a position, CBRE made Mr. Morrett assurances that he would have continued employment with CBRE for at least a reasonable period of time.

38. Mr. Morrett justifiably relied upon CBRE's offer of employment.

39. Based upon CBRE's offer of employment, Mr. Morrett had a reasonable expectation to be employed by CBRE for a reasonable period of time.

40. At the time of CBRE's offer of employment, Mr. Morrett was eligible for commissions with Protegis (his employer prior to CBRE) totaling approximately $150,000.00.

41. In accepting CBRE's offer of employment, Mr. Morrett forwent approximately $150,000.00 in commissions from Protegis.

42. Under Pennsylvania law, Mr. Morrett could not be subject to discharge without just cause for a reasonable time.

43. In deciding to forgo $150,000.00 in commissions from Protegis, Mr. Morrett relied upon CBRE's offer of employment for what he expected to be at least for a reasonable period of time.

44. CBRE failed to employ Mr. Morrett for a reasonable period of time.

45. CBRE did not have just cause to deny Mr. Morrett employment.

46. Mr. Morrett had proven himself at CBRE during the initial training period.

47. Despite having proven himself, CBRE denied Mr. Morrett employment as a result of a criminal record from 2003.

48. Mr. Morrett had already passed CBRE's initial criminal background check.

49. Mr. Morrett's criminal history was in no way related to his suitability for employment with CBRE.

WHEREFORE, Mr. Morrett prays for damages in excess of $75,000.00 (exclusive of interests and costs), including but not limited to all commissions he forwent at Protegis, lost back pay and future earnings. Mr. Morrett also demands costs, exemplary and punitive damages, and any other damages available to Mr. Morrett under the law.

## COUNT 3
## BREACH OF CONTRACT

50. All preceding paragraphs are hereby incorporated by reference as though fully set forth herein.

51. In accepting CBRE's offer of employment, Mr. Morrett forwent approximately $150,000.00 in commissions from Protegis.

52. In accepting a position with CBRE, Mr. Morrett had an implied contract to be employed by CBRE for a reasonable period of time.

53. CBRE failed to employ Mr. Morrett for a reasonable period of time.

54. Rather, CBRE denied Mr. Morrett employment during his training period.

55. CBRE did not have just cause to deny Mr. Morrett employment.

56. CBRE breached its implied contract to employ Mr. Morrett for a reasonable period of time.

WHEREFORE, Mr. Morrett prays for damages in excess of $75,000.00 (exclusive of interests and costs), including but not limited to all commissions he forwent at Protegis, lost back pay and future earnings. Mr. Morrett also demands costs, exemplary and punitive damages, and any other damages available to Mr. Morrett under the law.

**JURY TRIAL DEMANDED**

57. Mr. Morrett hereby demands a trial by jury.

> Respectfully submitted,
>
> PILLAR+AUGHT
>
> By: /s/ Cory A. Iannacone
> Cory A. Iannacone
> Attorney ID No. 200530 (PA)
> ciannacone@pillaraught.com
> 4201 E. Park Circle
> Harrisburg, PA  17111
> Phone:  717-308-9910
>
> *Attorneys for Plaintiff, Ronald Morrett*